Richard P. Kaye (RK 2016)
Anthony Galano, III (AG 9950)
ELLENOFF GROSSMAN & SCHOLE LLP
370 Lexington Avenue – 19th Floor
New York, New York 10022
(212) 370-1300
Attorneys for Defendants Citibank (South Dakota), N.A.
And Citibank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JAMES WILLIAMS,                                                    :
                                                                  :   Dkt. No. 07 CV 6680
                                                                  :   (RJH)(KNF)
                            Plaintiff,                            :
                                                                  :   **NOTICE OF MOTION**
                      -against-                                   :
                                                                  :
CITIBANK (SOUTH DAKOTA) N.A. & CITIBANK                           :
N.A.,                                                             :
                            Defendants                            :
-------------------------------------------------------------------x

PLEASE TAKE NOTICE, that upon the annexed Affidavit of Anthony Galano,

III, sworn to on February 21, 2008, the copy of Plaintiff's Amended Complaint, the

accompanying Memorandum of Law and all the pleadings and prior proceedings had

herein, the undersigned will move this Court, in the Courtroom of the Honorable Richard

J. Holwell, United States District Court Judge, Southern District of New York, at the

Courthouse located at 500 Pearl St., Courtroom 17B , New York, New York 10007, on

the April 14, 2008, or as soon thereafter as Plaintiff can be heard, for an Order pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the Amended

Complaint as to defendant Citibank, N.A. and all the causes of action in the Amended

Complaint that are pending against defendant Citibank (South Dakota) N.A. except for

Plaintiff's Fourth Cause of Action for Breach of Contract, as well as for such other and

further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE, that pursuant to the Order of the

Honorable Richard J. Holwell, dated February 1, 2008, opposition papers, if any, are to

be served and filed by Plaintiff on or before April 1, 2008, and Defendants shall serve

and file reply papers, if any, on or before April 14, 2008.

Dated: New York, New York
      February 21, 2008

                ELLENOFF GROSSMAN & SCHOLE LLP
                *Attorneys for Defendant Citibank (South Dakota),*
                *N.A. and Citibank, N.A.*

                By: _____
                      Anthony Galano III, Esq. (AG 9950)
                370 Lexington Avenue, 19th Floor
                New York, New York 10017
                (212) 370-1300

To:    James Williams
       P.O. Box 4082
       Grand Central Station
       New York, NY 10163

Richard P. Kaye (RK 2016)
Anthony Galano, III (AG 9950)
ELLENOFF GROSSMAN & SCHOLE LLP
370 Lexington Avenue – 19th Floor
New York, New York 10022
(212) 370-1300
Attorneys for Defendants Citibank (South Dakota), N.A.
And Citibank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

JAMES WILLIAMS,
:    Dkt. No. 07 CV 6680
:    (RJH) (KNF)

                Plaintiff,                        :

                -against-                          :    **AFFIDAVIT IN SUPPORT**
                                                   :    **OF MOTION TO DISMISS**
                                                   :
CITIBANK (SOUTH DAKOTA) N.A. & CITIBANK            :
N.A.,                                              :
                Defendants                         :

------------------------------------------------------------------x

STATE OF NEW YORK        )
                         )ss:
COUNTY OF NEW YORK       )


ANTHONY GALANO, III, being duly sworn, deposes and says:

1.      I am a member of the bar of the State of New York and am admitted to practice

law in the United States District Court for the Southern and Eastern Districts of New York. I am

associated with Ellenoff Grossman & Schole LLP, attorneys for Defendants Citibank (South

Dakota), N.A. ("Citibank (South Dakota)") and Citibank, N.A.. and, as such, am fully familiar

with the facts and circumstances set forth herein

2.      Defendants hereby move to dismiss the Amended Complaint ("FAC") filed by pro

se plaintiff James Williams ("Plaintiff") for failure to state a claim. I have annexed hereto as

1

Exhibit No 1. a true copy of the FAC.  The FAC alleges various claims pertaining to two credit card accounts issued by Citibank (together, the "Accounts").  Although Plaintiff attempts to assert different types of statutory and tort causes of action, the reality is that the instant dispute is a simple contract case wherein Plaintiff seeks to avoid paying his Citibank Accounts, which have balances owing together in excess of $40,000.

3.     Defendant Citibank N.A. seeks to dismiss all Counts against it because, based on the express terms of the card member agreement attached to the FAC by Plaintiff, Citibank N.A. is not the issuer of Plaintiff's Account.  Accordingly, based on the controlling language of the card member agreement relied upon by Plaintiff, he has no standing to sue Citibank, N.A.

4.     In addition, defendant Citibank (South Dakota) (the undisputed issuer of Plaintiff's credit card accounts) seeks to dismiss all Counts except for Plaintiff's Fourth Count for Breach of Contract.  These include the First Count for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., the Second Count for Violation of New York General Business Law Article 29-11 § 601 ("GBL § 601"), the Third Count for violation of New York General Business Law Article 22-A, § 349 ("GBL § 349"), the Fifth Count for Breach of Fiduciary Duty, the Sixth Count for Fraud, and the Seventh Count for Outrageous Conduct.

5.     As is discussed in Defendants' accompanying Memorandum of Law, these claims fail as a matter of law for various reasons, including that:  (i) the FDCPA does not apply to a creditor like Citibank; (ii) there is no private right of action for violation of GBL § 601; (iii) Plaintiff's claim based on GBL § 349 fails to state a claim based on, among other things, the South Dakota choice-of-law provision in the applicable card member agreement and federal preemption; (iv) Citibank, a creditor, is not a "fiduciary"; and (v) Plaintiff fails to allege facts

2

sufficient to state claims for fraud and outrageous conduct.

WHEREFORE, , Citibank (South Dakota) and Citibank, N.A. respectfully request that this Court dismiss the FAC with prejudice as against Citibank, N.A. and dismiss the First, Second, Third, Fifth, Sixth and Seventh Counts with prejudice as against Citibank (South Dakota).

Anthony Galano, III

Sworn to before me this
21st day of 2008

_____
Notary Public

RICHARD PAUL KAYE
NOTARY PUBLIC, State of New York
NO. 31-4753331
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires Aug. 31, 2009

3

Exhibit #1

(Rev. 2/5/98) Summons in a Civil Action

# United States District Court

| Southern | **DISTRICT OF** | New York |

James Williams

**SUMMONS IN A CIVIL CASE**

**v.**

Citi Bank, N.A. and
Citi Bank (South Dakota), N.A.

**CASE NUMBER:**

## 07 CV 6680

*JUDGE HOLWELL*

**TO:** (Name and address of defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon **PLAINTIFF'S ATTORNEY** (name and address)

Prose James Williams
P.O. Box 4082
Grand Central Station
New York, NY 10163-4082

An answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

JUL 2 4 2007

CLERK

DATE

(BY) DEPUTY CLERK

(Rev. 2/5/98) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and Complaint was made by me [1] | Date |
|---|---|
| NAME OF SERVER (PRINT) | Title |

**CHECK ONE BOX BELOW TO INDICATE APPROPRIATE METHOD OF SERVICE**

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify) _____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
          Date                            Signature of Server

                                            Address of Server

(1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JAMES WILLIAMS, on Behalf of Himself and
                Others Similarly Situated,

                        Plaintiff,

       - against -

CITIBANK, N.A., and
CITIBANK (SOUTH DAKOTA), N.A.
                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Index No.:
**07-CV-6680**

Amended Complaint

Jury Trial Demanded

      Plaintiff, above named, complaining against the defendants, above named,

respectfully shows to the Court as follows:

## I.
## NATURE OF ACTION

      1. This is an action for damages, attorney's fees and cost pursuant to the Fair Debt

Collection Practices Act 15 U.S.C. § 1692 et. seq.; New York General Business Law

Article 29-H § 601 Unlawful Collection Practices, and; New York General Business Law

Article 22-A, § 349 Deceptive Business Practices. In addition, this action is for damages

under both South Dakota and New York State law for Breach of Contract, Breach of

Fiduciary Duty, Fraud, and Outrageous Conduct, as each relates to federal and state law.

## II.
## JURISDICTION and VENUE

      2. Jurisdiction of this case is founded upon 15 U.S.C. § 1692k, which grants the

United States District Courts jurisdiction to hear this action without regard to the amount

in controversy.

3.  This Court has supplemental jurisdiction of plaintiff's claims under South Dakota and New York State Law based on 28 U.S.C. § 1367, inasmuch as the state law claims are so related to the federal claims that they form part of the same case and controversy under Article III of the United States Constitution.

4.  Venue is proper pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the plaintiff's claims occurred in the United States District Court for the Southern District of New York.  Further, venue is proper as to the corporate defendants under 28 U.S.C. § 1391(c).

### III.
### PARTIES

5.  At all times herein mentioned, plaintiff, James Williams, is an adult and a citizen of the City and State of New York, and a non-corporate customer of defendants, CitiBank, N.A. and CitiBank (South Dakota), N.A. via its franchised consumer product called CitiCard MasterCard.

6.  At all times herein mentioned, defendant, CitiBank, N.A. is a corporation organized and existing under the laws of the State of New York, whose principal New York City offices are located at 399 Park Avenue, New York, NY, and with operations located throughout the City of New York each serving as MasterCard account management and payment centers for its product, CitiBank cards.

7.  At all times herein mentioned and upon information and belief, defendant, CitiBank (South Dakota), N.A., is a corporation organized and existing under the laws of the State of South Dakota and is under common ownership and control with CitiBank,

N.A. and, upon information and belief, maintains for defendant, CitiBank, N.A., its

CitiCard operations.  In this capacity, CitiBank (South Dakota), N.A. performs billing,

payment processing, customer service and collections for CitiBank, N.A.  Upon

information and belief, CitiBank (South Dakota), N.A. offices are located at 701 East 60th

Street North  Sioux Falls, South Dakota.

### IV.
### Factual Allegations

    **8.**  The plaintiff, James Williams, was a non-corporate customer of CitiBank via its

franchise product, CitiCard MasterCard, and maintained two separate accounts:

(1) Acct. No.: 5424-1808-6953-7065, and; (2) Acct. No.: 5424-1804-2656-2606.  Each of

which was timely paid each monthly billing statement period or timely paid off in its

entirety each monthly billing statement period.  Plaintiff never missed a payment when

due, nor late in making any payments.

    **9.**  Plaintiff had maintained the same MasterCard account (1) Acct. No.: 5424-1808-

6953-7065  since on or about from 1977.  Plaintiff had maintained the same MasterCard

account (2) Acct. No.: 5424-1804-2656-2606  since on or about from 2000.

    **10.**  In accordance with its policy, defendants issued a "Card Agreement" to plaintiff,

a copy of which is annexed as **Exhibit A.**  Page of "11" of defendants' Agreement states:

### Arbitration Provision for Certain Cardmembers:

    The accompany letter indicates whether your account is subject
    to mandatory, binding arbitration.  If it is, the following "Arbitration"
    provision is part pf this Agreement.

3

11. Defendants' did not provide any "accompany[ing] letter" relating to plaintiff and his two CitiCard accounts, stating that he was "subject to mandatory, binding arbitration," or other notice that he was "subject to mandatory, binding arbitration."

12. Defendants' Card Agreement at pages "15" through "16", (see Exhibit A), also stated:

### What To Do If There's An Error in Your Bill

*Your Billing Rights. Keep This Notice for Future Use*

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Error or Questions About Your Bill*

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no latter than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
• Please sign your letter.

4

If you have authorized us to pay your credit card bill automatically
from your savings or checking account, you can stop the payment
on any amount you think is wrong. To stop the payment you must
tell us at least three business days before the automatic payment
is scheduled to occur.

*Your Rights and Our Responsibilities After We Receive Your Written Notice.*

We must acknowledge your letter within 30 days, unless we have
corrected the error by then. Within 90 days, we must either correct
the error or explain why we believe your billing statement was cor-
rect. After we receive your letter, we cannot try to collect any amount
you question, or report your account as delinquent. We can continue
to bill you for the amount you question, including finance charges,
and we can apply any unpaid amount against your credit line. You
do not have to pay any questioned amount while we are investigat-
ing , but you are still obligated to pay the parts of you balance that
are not in question.

If we find that we made a mistake on your billing statement, you
will not have to pay any finance charges related to any questioned
amount. If we didn't make a mistake, you may have to pay finance
charges, and you will have to make up any missed payments on the
questioned amount. In either case, we will send you a statement
of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report
you as delinquent. However, if our explanation does not satisfy you
and you write to us within 10 days telling us that you still refuse to
pay, we must tell anyone we report you to that you have a question
about your bill. And, we must tell you the name and address of any-
one to whom we report your account information. We must tell
anyone we report you to that the matter has been settled between
us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the
questioned amount, even if your billing statement was correct.

13. On or about July 25, 2006, plaintiff received notice in the mail printed on his July

2006 billing statement that the Annual Percentage Rate on Acct. No.: 5424-1808-

6953-7065 (acct. (1) above) had been increased to 32.240%. Had plaintiff been aware of defendant's interest increase he would not have used defendant's MasterCard before receiving notice of defendant's action. Plaintiff ceased all use of defendant's CitiCard MasterCard after receiving notice of the interest increase on July 25, 2006.

14. In a certified letter dated August 7, 2006 **(Exhibit B)**, and received by defendant on August 11, 2006 **(Exhibit C)**, plaintiff informed defendant that he had timely made the June payment on his Acct. No.: 5424-1808-6953-7065, **(Exhibit D)**. Defendant did not respond that it had received plaintiff's June payment nor did defendant attempt to correct it alleged non-payment by the plaintiff.

15. Plaintiff's new minimum payment had been increase from $130.50 to $334.66 and the original card balance of $7,455.55 was now accumulating compound interest at the rate of an APR of 32.240%.

16. Defendants' actions in increasing plaintiff's minimum billing cycle payment from $130.50 to $334.66 and increasing plaintiff's APR to 32.240%, effectively placed plaintiff in a financial position where he was unable to make defendants' demanded minimum billing cycle payments.

17. Plaintiff's July 2006 statement for Acct. No.: 5424-1804-2656-2606 (acct. (2) above) stated that payment had been timely received and did not show any increase in the APR, **(Exhibit E)**. Plaintiff had timely personally paid both June 2006 accounts at the same time and date, July 3, 2006, and same CitiBank branch location, well before the payment due dates of July 11, 2006.

18. On or about August 25, 2006, plaintiff received notice in the mail printed on his August 2006 billing statement that the Annual Percentage Rate on Acct. No.: 5424-1804-2656-2606 (acct. (2) above) had been increased to 32.240%. Had plaintiff been aware of defendant's interest increase he would not have used defendant's CitiCard MasterCard before receiving notice of defendant's action. Plaintiff ceased all use of defendant's CitiCard MasterCard after receiving notice of the interest increase on August 25, 2006.

19. In a certified letter dated September 7, 2006 (**Exhibit F**), and received by defendant on September 12, 2006 (**Exhibit G**), plaintiff informed defendant that he had timely made the July payment on his Acct. No.: 5424-1804-2656-2606, (**Exhibit E**). Defendant did not respond that it had received plaintiff's July 2006 payment, nor did defendant attempt to correct its alleged non-payment by the plaintiff.

20. Plaintiff's new minimum payment on Acct. No.: 5424-1804-2656-2606 had been increase from $304.05 to $673.07 and the original card balance of $16,161.98 was now accumulating compound interest at the rate of an APR of 32.240%.

21. Defendants' actions in increasing plaintiff's minimum billing cycle payment from $304.05 to $673.07 and increasing plaintiff's APR to 32.240%, effectively placed plaintiff in a financial position where he was unable to make defendants' demanded minimum billing cycle payments.

22. In making his payment on Acct. No. 5424-1808-6953-7065 for the June 2006 statement period, plaintiff had inadvertently paid $130.00 instead of the minimum

amount due of $130.50, a $0.50 (fifty-cent underpayment). (See **Exhibit H** at "Minimum Amount Due $130.50.")

23. Because of the $0.50 difference of plaintiff's payment, defendants went on a rampage:

(a) destroying plaintiff's good credit record;

(b) assessing iniquitous late fees, over credit fees;

(c) compounding interest fees of 32.240%;

(d) releasing confidential and personal information about plaintiff to numerous collection agencies nationwide;

(e) publishing plaintiff's home telephone to a sundry of collection companies countrywide;

(f) slandering and libeling plaintiff and his credit;

(g) engaging in premeditated bombarding of plaintiff's home telephone with over 300 threatening collection calls, and;

(h) using the United States Postal System to mail threatening collection letters to coerce payment of fraudulent fees and charges.

24. Defendants began employing the above conduct against the plaintiff from on or about September 2006 until the present.

25. Defendants engaged in the above conduct despite plaintiff's timely letters to defendants' Customer Service, per its Card Agreement with the plaintiff.

26.  The cumulative effect of defendants' conduct of collection threats and harassments, compounding fees and finance charges was to trap an unwary consumer, such as the plaintiff, in a vicious cycle of pyramiding debt from which he could not escape.

<div style="text-align:center">

**V.**
**First Cause of Action**
**Violation of the Fair Debt Collection Practices Act**
**15 U.S.C. § 1692**

</div>

27.  Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "26" herein.

28.  In demanding the sum of $7,455.55 plus late fees, over credit line fees, and compounding interesting with an APR of 32.240%, because of a $0.50 (fifty cent) underpayment by plaintiff on his CitiCard MasterCard Acct. No.: 5424-1808-6953-7065, defendants violated 15 U.S.C. §1693e(2) in that they repeatedly falsely represented the character and amount of the debt.

29.  In demanding the sum of $16,161.98 plus late fees, over credit line fees, and compounding interest with an APR of 32.240% on plaintiff's CitiCard MasterCard Acct. No.: 5424-1804-2656-2606, when in fact, the account was perfectly current in monthly due billing payments, defendants violated 15 U.S.C. §1693e(2) in that they repeatedly falsely represented the character and amount of the debt.

30.  The defendants violated 15 U.S.C. §1692e(2)(A), (5) and (10) by repeatedly misrepresenting, via telephone calls and letters, the imminent nature of legal action by defendants.

<div style="text-align:center">9</div>

31. The defendants violated 15 U.S.C. §1692g by making a threat of suit during the debt validation request period in a manner that overshadowed the notice of validation rights and would create confusion for a least sophisticated consumer about his rights.

32. The defendants violated 15 U.S.C. §1692f(6) by threatening to take judicial action to effect dispossession or disablement of property where it did not have a security interest or other possessory right and in fact did not actually intend to take such possession.

33. The defendants violated 15 U.S.C. §1692e(11) in that in no telephone contact did they advise plaintiff that they were attempting to collect a debt and information would be used for that purpose.

34. The defendants violated 15 U.S.C. §1692e(4) during telephone contact with plaintiff in that they threatened judicial seizure, asset assessment, or lien, where such action was unlawful to take and not permitted by any contractual right, and stated for the sole purpose of terrifying the plaintiff.

35. The defendants violated 15 U.S.C. §1692f in that their actions were an unfair and/or unconscionable means to collect a debt for the reasons set forth in paragraphs immediately preceding, and those paragraphs of the Complaint numbered "1" through "26" herein.

36. The defendants violated 15 U.S.C. §1692e(10) by stating plaintiff would be sued, when, in fact, no lawsuit was intended.

37. The defendants violated 15 U.S.C. §1692e generally by having a non-attorney imply, in telephone contact with the plaintiff, that they controlled the timing or scope of litigation allegedly to be filed against plaintiff.

38. The defendants violated 15 U.S.C. §1692e by making statements during contact with the plaintiff in telephone calls and letters, indicating that excessive fee and costs would be collected, that plaintiff had no chance to defend, that defendants, or its clients always won, no matter what, that a lien would be placed on his home and personality, and that plaintiff's credit would be "ruin for life," which statements were untrue, false, deceptive and/or misleading and would be deceptive or misleading to the least sophisticated consumer.

39. As a result of the above violations of the Fair Debt Collection Practices Act, the defendants are liable to the plaintiff for declaratory judgment that defendants' conduct violated the FDCPA, and plaintiff's actual damages, statutory damages, and costs and attorney's fees.

**VI.**
**Second Cause of Action**
**Violation of New York General Business Law Article 29-H § 601**
**Unlawful Collection Practices**

40. Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "39" herein.

41. General Business Law § 601 prohibits any creditor, or its agent, from, *inter alia*, engaging in the following practices:

   a.  Knowingly collecting, attempting to collect, or asserting a right to any collection fee, attorney's fee, court cost or expense unless such charges are justly due and legally chargeable against the debtor;

   b.  Communicating or threatening to communicate the nature of a consumer claim to the debtor's employer prior to obtaining final judgment against the debtor;

   c.  Disclosing or threatening to disclose information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact;

   d.  Communicating with the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as can reasonably be expected to abuse or harass the debtor;

   e.  Threatening any action which the principal creditor in the usual course of his business does not in fact take, or

   f.  Claiming, or attempting or threatening to enforce a right with knowledge or reason to know that the right does not exist.

42.  Defendant, CitiBank, N.A. is the principal creditor herein, and defendant CitiBank (South Dakota), N.A. is the agent of the principal creditor. Accordingly, defendants are subject to General Business Law § 601.

43.  By reason of the acts and practices described in paragraphs "1" through "39" defendants repeatedly and persistently engaged in unlawful collections prohibited by GBL § 601 against the plaintiff.

44.  As a result of the above violation of the New York General Business Law Article 29-H § 601, the defendants are liable to the plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

## VII.
### Third Cause of Action
### Violation of New York General Business Law Article 22-A, § 349
### Deceptive Business Practices

45. Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "44" herein.

46. General Business Law, Article 22-A, § 349 declares unlawful any deceptive acts or practices in the conduct of any business, trade or commerce in the state of New York.

47. By reason of the acts and practices described in paragraphs "1" through "44" defendants repeatedly and persistently engaged in deceptive business practices in the billing and collection of credit card services against the plaintiff and his class.

48. As a result of the above violation of the New York General Business Law Article 22-A § 349, the defendants are liable to the plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

## VIII.
### Fourth Cause of Action
### Breach of Contract

49. Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "48" herein.

50. Defendants, CitiBank, N.A. and CitiBank (South Dakota), N.A., agreed to address any error or problem a customer my have concerning his or her CitiCard, (See page "15" of the Card Agreement, Exhibit "A" attached hereto)

51.  The plaintiff complied with all conditions stated in defendants' Card Agreement for error or problem resolution.

52.  The defendants fail to abide by the conditions stated in its Card Agreement for error or problem resolution with the plaintiff.

53.  By acquiescing in the conduct herein alleged at paragraphs "8" through "26" herein, defendants, CitiBank, N.A. and CitiBank (South Dakota), N.A., materially breached their obligations under the Card Agreement by failing to address the plaintiff's written letters dated August 7, 2006, and September 7, 2006, each of which, concerned and error and problem with defendants' CitiCards.

54.  As a result of this breach of said defendants' obligations under its Card Agreement, the plaintiff has suffered libel to his reputation, credit libel, slander to his reputation, credit slander, emotional distress, and invasion of privacy.

## IX.
### Fifth Cause of Action
### Breach of Fiduciary Duty

55.  Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "54" herein.

56.  Defendants, CitiBank, N.A. and CitiBank (South Dakota), N.A., are national banking corporations operating under federal and state law.

57.  Plaintiff was a customer of said defendants via its consumer product, CitiCard MasterCard.

58.  Said defendants were empowered to act according to state and federal laws in the use of its authority for the benefit of a customer/banking relationship.

59.  Said defendants used their authority to circumvent the protection of the plaintiff's customer/banking relationship, for which they were entrusted to protect according to statutes made and provided, and to act in a reasonable manner in accordance with the terms of their Card Agreement with the plaintiff.

60.  Said defendants used their fiduciary powers to exceed the scope of their authority. Said defendants decisions of bad faith and discriminatory actions against the plaintiff resulted in the plaintiff suffering libel to his reputation, credit libel, slander to his reputation, credit slander, emotional distress, and invasion of privacy.

61.  Said defendants', CitiBank, N.A. and CitiBank (South Dakota), N.A, by failing to act reasonably, and by engaging in the conduct herein alleged at paragraphs "8" through "26", breached their fiduciary duties that they owed to the plaintiff, all to the damage of the plaintiff in an amount to be determined at trial.

## X.
## Sixth Cause of Action
## Fraud

62.  Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "61" herein.

63.  On or about July 2006, in the city and state of New York, and the city and state of Sioux Falls, South Dakota, defendants, CitiBank, N.A. and CitiBank (South Dakota), N.A., pledged, as represented to the plaintiff through said defendants' Card Agreement,

that they would use lawful and good faith efforts to address errors and problems that could arise in plaintiff's CitiCard MasterCard accounts. These representations, as stated at pages "15" through "16" of the Card Agreement were false and the defendants knew the falsity of these statements at the time they were made, and at all times after they were made.

64. Also, on or about July 2006, in the city and state of New York, and the city and state of Sioux Falls, South Dakota, defendants, CitiBank, N.A. and CitiBank (South Dakota), N.A., engaged in the conduct herein alleged at paragraphs "8" through "26" rather than perform the promises in its Card Agreement, to provide plaintiff with error and problem review.

65. Plaintiff is informed and believes, and thereon alleges, and as represented by the documents of the defendants and their agents, herein attached as "Exhibit A" through Exhibit H," that the defendants had no intention to honor their obligations to the plaintiff under their Card Agreement, but rather demanded that the plaintiff pay iniquitous late fees, over credit fees, and compounding interest fees of 32.240%, all of which were illegal and usurious.

66. Plaintiff relied upon the representations made by the defendants, through said defendants Card Agreement, and would not have entered into the Card Agreement otherwise.

67. Plaintiff is informed and believes, and therefore alleges, that defendants engaged in the conduct herein alleged at paragraphs "8" through "26" to harass and defraud

plaintiff into paying defendants' iniquitous late fees, over credit fees, and compounding interest fees of 32.240%, with malice toward plaintiff and his class.

68.  By reason of the defendants', CitiBank, N.A. and CitiBank (South Dakota), N.A., deceit, the plaintiff and his class have been injured, in that defendants slandered and libeled plaintiff and his credit; released confidential and personal information about plaintiff to numerous collection agencies nationwide; threatened plaintiff through the United States Postal System with collection letters to coerce payment of fraudulent fees and charges; engaged in premeditated bombarding of plaintiff's home telephone with over 300 threatening collection calls, and; published  plaintiff's home telephone to a sundry of collection companies countrywide, all in an amount to be determined at trial.

69.  The defendants, by engaging in the aforementioned conduct have violated federal and state antitrust laws.

70.  These acts were malicious, fraudulent and oppressive, justifying an award of punitive damages.

## XI.
## Seventh Cause of Action
## Outrageous Conduct

71.  Plaintiff repeats all allegations set forth in the Complaint at paragraphs "1" through "67", herein.

72.  The defendants, CITIBANK, N.A. and CITIBANK (SOUTH DAKOTA) N.A., and each of them, by engaging in the conduct herein alleged at paragraphs "8" through

"26" have employed shocking, contemptible and offensive actions and conduct against the plaintiff and his class.

**73.** These acts by defendants, and each of them, were malicious, fraudulent, and oppressive, justifying an award of punitive damages.

## XII.
### Request for Relief

WHEREFORE, plaintiff, JAMES WILLIAMS, respectfully requests:

(1) That judgment in a sum not less that $150,000 be entered against the defendants, CITIBANK, N.A. and CITIBANK (SOUTH DAKOTA) N.A., for each violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; the New York General Business Law Article 29-H § 601, Unlawful Collection Practices, and; the New York General Business Law Article 22-A, § 349 Deceptive Business Practices, and for the following:

(a) Declaratory judgment that defendants conduct violated the Fair Debt Collection Practices Act, and declaratory and injunctive relief for the defendants violations of the New York State Acts: General Business Law Article 29-H § 601, and General Business Law Article 22-A, § 349;

(b) Actual Damages;

(c) Statutory damages pursuant to 15 U.S.C. § 1692k, New York General Business Law Article 29-H § 601, and New York General Business Law Article 22-A, § 349;

(d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k, New York General Business Law Article 29-H § 601, and New York General Business Law Article 22-A, § 349, and;

(2) As to Breach of Contract: Compensatory Damages in an amount to be determined at trial, not less than a sum of $28,000.

(3) As to Breach of Fiduciary Duty: Compensatory Damages including all monthly payments and interest and all other charges impose, hidden and concealed, made by plaintiff under defendants' Card Agreement, in an amount to be determined at trial, in a sum not less than $200,000.

(4) As to Outrageous Conduct: Punitive Damages, in an amount to be determined at trial, in a sum not less than $10,000,000.

(5) For such other and further relief as may be just and proper.

Dated: New York, NY
November 12, 2007

Respectfully Submitted,

*James Williams*

James Williams, Plaintiff, *Pro se*
P. O. Box 4082
Grand Central Station
New York, NY 10163-4082
(646) 321-0120

11/15/2007 14:02 FAX  93306745          LEGAL                  → JULIE NELSON      ☑024/050

*x hibiT*

<div style="border:1px solid black; text-align:center">

**Exhibit A**

Citibank Card Agreement
Page 1 of 16

</div>

ther at once or under
less we notify you
/e date of the change
rms, even if the 25

ny of our rights under

ur rights and obliga-

nt shall be governed by
ore we are located.

shown on the billing
Directory Assistance to

uth Dakota), N.A.
00
SD 5/117

**In Your Bill.**

erture Use.
out your rights and
ig Act.

bout Your Bill.
or if you need more
ded in the Billing Rights
atement. Write to us
no later than 60 days
n which the error
but doing so will not

or:

ny you believe there
cribe the item you are

ars bill automatically
ase stop the payment

on any amount you think is wrong. To stop the payment you must
tell us at least three business days before the automatic payment
is scheduled to occur.

*Your Rights and Our Responsibilities After We Receive
Your Written Notice.*

We must acknowledge your letter within 30 days, unless we have
corrected the error by then. Within 90 days, we must either correct
the error or explain why we believe your billing statement was cor-
rect. After we receive your letter, we cannot try to collect any amount
you question, or report your account as delinquent. We can continue
to bill you for the amount you question, including finance charges,
and we can apply any unpaid amount against your credit line. You
do not have to pay any questioned amount while we are investigat-
ing, but you are still obligated to pay the parts of your balance that
are not in question.

If we find that we made a mistake on your billing statement, you
will not have to pay any finance charges related to any questioned
amount. If we didn't make a mistake, you may have to pay finance
charges, and you will have to make up any missed payments on the
questioned amount. In either case, we will send you a statement
of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report
you as delinquent. However, if our explanation does not satisfy you
and you write to us within 10 days telling us that you still refuse to
pay, we must tell anyone we report to you that you have a question
about your bill. And, we must tell your account the name and address of any-
one to whom we reported your account information. We must tell
anyone we report you to that the matter has been settled between
us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the
questioned amount, even if your billing statement was correct.

*Special Rule for Credit Card Purchases.*

If you have a problem with the quality of property or services that
you purchased with a credit card, and you have tried in good faith
to correct the problem with the merchant, you may have the right
not to pay the remaining amount due on the property or services.
There are two limitations on this right:

• You must have made the purchase in your home state or, if not
within your home state, within 100 miles of your current address;
and

• The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or
if we mailed you the advertisement for the property or services.

© 2005 Citibank (South Dakota), N.A.
6570841Q Pr. 11/05 107527

11/05

# CARD AGREEMENT

This document and the accompanying letter together make up
your Card Agreement and throughout this document are referred
to as Agreement or Card Agreement. The letter contains important
account information, including your annual percentage rates and the
amount of any membership fee. Please read and keep both the letter
and this document for your records. This Agreement is binding on
you unless you cancel your account within 30 days after receiving
the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will
apply. The words *you*, *your*, and *yours* mean all persons responsi-
ble for complying with this Agreement, including the person who
applied to open the account and the person to whom we address
billing statements. The word *card* means one or more cards or other
access devices, such as account numbers, that we have issued to
permit you to obtain credit under this Agreement. The words *we*,
*us*, and *our* mean Citibank (South Dakota), N.A., the issuer of your
account. The words *authorized user* mean any person to whom you
give permission to use your account.

## Using Your Account and Your Credit Line.

The card must be signed to be used. Whether you sign the card or
not, you are fully responsible for complying with all the terms of this
Agreement, including the obligation to pay us for all balances due
on your account as specified in this Agreement. Your card must only
be used for lawful transactions.

A portion of your credit line, called the cash advance limit, is avail-
able for cash advances. At our discretion, we may change your
credit line or cash advance limit at any time. We will notify you of
any new line or limit either by sending you a notice or through your
billing statement. A change may take effect before you receive notifi-
cation from us. You may request a change to your credit line or cash
advance limit by contacting Customer Service by telephone or mail.

The full amount of your credit line is available to buy or lease goods
or services wherever the card is honored. Your cash advance limit is
available for cash through any bank or automated teller machine that
accepts the card or by using convenience checks. The total amount
charged on your account, including purchases, balance transfers,
cash advances, finance charges, fees, or other charges, must always
remain below your credit line. However, if that total amount exceeds
your credit line you must still pay us. We may approve transactions
that cause you to exceed your credit line without waiving any of our
rights under this Agreement.

## Additional Cards:

You may request additional cards on your account for yourself or
others and you may permit an authorized user to have access to the
card or account number. However, if you do, you must pay us for all
charges made by those persons, including charges for which you may
not have intended to be responsible. You must notify us to revoke an
authorized user's permission to use your account. If you do so, we
may close the account and issue a new card or a card with a different
account number. You are responsible for the use of each card issued
on your account according to the terms of this Agreement.

15

16

11/15/2007 14:02 FAX 93306745    LEGAL    → JULIE NELSON    ☒026/050

<div style="text-align:center">

**Exhibit A**
Citibank Card Agreement
Pages 2 and 3 of 16

</div>

**Membership Fee:**

The accompanying letter indicates whether your account is subject to a membership fee. If it is, the fee is added to the standard purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**

Your billing statement shows the total balance, any finance charges, fees, the minimum amount due, and the payment due date. It also shows your current credit line and cash advance limit; an itemized list of current charges, convenience checks, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements. However, finance charges and fees will continue to accrue whether or not we send you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the Balance:**

The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases or cash advances and subtract any credits or payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Annual Percentage Rates for Purchases and Cash Advances:**

Your annual percentage rates and the corresponding daily or monthly periodic rates appear on the accompanying letter. A daily periodic rate is the applicable annual percentage rate divided by 365. A monthly periodic rate is the applicable annual percentage rate divided by 12. Whether or not an annual percentage rate is based on the U.S. Prime Rate plus a margin is indicated on the accompanying letter. Please see the section entitled "Variable Annual Percentage Rates for Purchases and Cash Advances" for details relating to how these rates may change, including if you default under any Card Agreement that you have with us.

**Variable Annual Percentage Rates for Purchases and Cash Advances:**

If any annual percentage rate is based on the U.S. Prime Rate plus a margin, we will calculate the rate by adding the applicable margin that appears in the accompanying letter to the U.S. Prime Rate published in *The Wall Street Journal*. If more than one U.S. Prime Rate is published, we may choose the highest rate. If *The Wall Street Journal* ceases publication or to publish the U.S. Prime Rate, we may use the U.S. Prime Rate published in any other newspaper of general circulation, or we may substitute a similar reference rate at our sole discretion.

Whether the U.S. Prime Rate is reviewed on a billing period, month end or quarterly basis is indicated on the accompanying letter.

• If the U.S. Prime Rate is reviewed on a billing period basis, for each billing period we will use the U.S. Prime Rate published two business days prior to your Statement/Closing Date for that billing period. Any increase or decrease in a variable annual percentage rate due to a change in the U.S. Prime Rate takes effect as of the first day of the billing period in which we calculate the variable annual percentage rate.

• If the U.S. Prime Rate is reviewed on a month end basis, we will use the U.S. Prime Rate published on the last business day of the month. Any increase or decrease in a variable annual percentage rate due to a change in the U.S. Prime Rate takes effect as of the first day of the billing period that begins in the month directly following the month in which the U.S. Prime Rate used to calculate your variable annual percentage rate is published.

• If the U.S. Prime Rate is reviewed on a quarterly basis, we will use the U.S. Prime Rate published on the third Tuesday of March, June, September, and December of each year. If the third Tuesday is a holiday, we will use the U.S. Prime Rate published the next day. Any increase or decrease in a variable annual percentage rate due to a change in the U.S. Prime Rate takes effect on the first day of the billing period directly following the billing period in which the U.S. Prime Rate used to calculate your variable annual percentage rate is published.

• When a change in an applicable variable annual percentage rate takes effect we will apply it to any existing balances, subject to any promotional rate that may apply.

Your annual percentage rates may also vary if your default under any Card Agreement that you have with us because you fail to make a payment to us when due, you exceed your credit line, or you make a payment to us that is not honored. In such circumstances, we may increase your annual percentage rates (including any promotional rates) on all balances to a variable default rate of up to the rate indicated on the accompanying letter. The maximum variable default rate currently in effect and the corresponding daily and/or monthly periodic rates appear on the accompanying letter. Factors considered in determining your variable default rate may include how long your account has been open, the timing or seriousness of a default under any Card Agreement that you have with us, or other indications of account performance. The variable default rate takes effect as of the first day of the billing period in which you default. Your account may again become eligible for a lower annual percentage rate on new purchases, new cash advances, or both after you have met the terms of all Card Agreements that you have with us for six consecutive billing periods. Your existing balances will remain subject to the variable default rate until they are paid in full, unless we tell you otherwise.

An increase in the variable annual percentage rate means you will incur a higher finance charge and perhaps a higher minimum payment.

**Promotional Rate Offers:**

At our discretion, we may offer you a promotional annual percentage rate for all or a part of any balances. The period of time for which the promotional rate applies may be limited. Any applicable promotional rate, the corresponding periodic rates, and the period of time

*[right column partially cut off]*
during which it is ...
Any promotional ...
and this Agreement ...

**Finance Ch...**
Finance charges ...
vances will begin ...
to the daily balan...
payment in full b...
total New Balanc...
payment due dat...
due date on your...
to avoid impositi...
(excluding balanc...
transfer offers for...
to avoid addition...
your balance tran...

We will calculate ...

• We figure a por...
plying the daily ...
of standard adva...
aranly adding to...
each day in the b...

• For finance char...
on the day after ti...
period and includ...
period. The numb...

• To get the daily...
feature every day...
previous balance ...
and any finance c...
credits or paymen...
ments. A credit o...

• We add a new b...
the Sale Date you...

• We add a new b...
purchase or adva...
billing statement...
for the balance to...
complete a balanc...
cific amount. If w...
check directly to u...
check for paymen...

• The Balances S...
are the averages ...
period. If you ma...
days in the billing...
the result will be ...
that feature, exce...
method of calcula...
the periodic rate f...
finance charges.

**Special Fin...**
**for Certain ...**
If the calculation...
nying letter as "M...

---

## Exhibit A
### Citibank Card Agreement
### Pages 4 and 5 of 16

---

during which it is in effect will appear on the accompanying letter. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

### Finance Charges:

Finance charges for purchases, balance transfers, and cash advances will begin to accrue from the date the transaction is added to the daily balance, as described below, and continue to accrue until payment in full is credited to your account. However, if you paid the total New Balance, if any, listed on the last billing statement by the payment due date on that statement you will have until the payment due date on your current statement to pay your total New Balance to avoid imposition of additional finance charges on purchases (excluding balance transfers). If you have accepted certain balance transfer offers for which you may be eligible, you may not be able to avoid additional finance charges on purchases, as described in your balance transfer offer.

We will calculate finance charges as follows:

• We figure a portion of the finance charge on your account by multiplying the daily balance on each feature (e.g., standard purchases or standard advances) by the applicable daily periodic rate and separately adding together any such finance charges for each feature for each day in the billing period.

• For finance charge calculation purposes, the billing period begins on the day after the Statement/Closing Date of the previous billing period and includes the Statement/Closing Date of the current billing period. The number of days in the billing period may vary

• To get the daily balance, we take the beginning balance for each feature every day (which may include unpaid finance charges from previous billing periods), add any new transactions, any new fees, and any finance charge on the previous day's balance, subtract any credits or payments credited as of that day, and make other adjustments. A credit balance is treated as a balance of zero.

• We add a new purchase to the appropriate purchase balance as of the Sale Date shown on your billing statement.

• We add a new balance transfer or cash advance to the appropriate purchase or advance balance as of the Post Date shown on your billing statement. The Post Date is the date we receive your request for the balance transfer or cash advance, including a request that we complete a balance transfer check or convenience check for a specific amount. If you send a balance transfer check or convenience check directly to someone, the Post Date is the date we receive the check for payment.

• The Balances Subject to Finance Charge on the billing statement are the averages of the respective daily balances during the billing period. If you multiply this figure for each feature by the number of days in the billing period and by the applicable daily periodic rate, the result will be the periodic rate finance charges assessed for that feature, except for minor variations caused by rounding. This method of calculating the finance charges results in daily compounding of finance charges.

### Special Finance Charge Calculation Method for Certain Cardmembers:

If the calculation method on your account is listed in the accompanying letter as "Monthly" for purchases and "Monthly" or "Daily"

---

for advances, or if the periodic rate in the Rate Summary Section of your billing statement is followed by an "(M)" (indicating a monthly periodic rate) for purchases and an "(M)" or an "(F)" (indicating a daily periodic rate) for advances, we use the calculation methods described below instead of those described in the previous section.

• We figure a portion of your finance charge on transactions subject to a monthly periodic rate by multiplying the monthly periodic rate by the Balance Subject to Finance Charge (including new transactions). We may figure a portion of your finance charge on advances by multiplying the daily periodic rate, if applicable, by the number of days in the billing period and then applying the result to the Balance Subject to Finance Charge for advances (including new advances).

• To get the Balance Subject to Finance Charge on each feature (e.g. standard purchases and standard cash advances) we take the beginning balance for that feature every day (which may include unpaid finance charges from previous billing periods), add any new transactions and fees, subtract any credits or payments credited as of that day, and make other adjustments. We add a new purchase to the appropriate purchase balance as of the Sale Date shown on your billing statement, and a new balance transfer or cash advance to the appropriate purchase or advance balance as of the Post Date shown on your billing statement. If you send a balance transfer or cash advance, including a request that we complete a balance transfer check or convenience check for a specific amount. If you send a balance transfer check or convenience check directly to someone, the Post Date is the date we receive the check for payment. A credit balance is treated as a balance of zero. This gives us the daily balance. We add up all the daily balances for the billing period (except the balances on the Statement/Closing Date) and divide by the total number of days in the billing period. This gives us the Balance Subject to Finance Charge for that feature.

• For finance charge calculation purposes, the billing period begins on the Statement/Closing Date of the previous billing period and varies with the number of days in the billing period.

### Transaction Fee for Balance Transfers:

You have obtained a balance transfer for which we assess a balance transfer transaction fee if you transfer a balance by means other than a convenience check, or you obtain funds through a balance transfer check. Balance transfers will be treated as purchases unless otherwise provided in this Agreement. If your account is subject to transaction fees for balance transfers, the accompanying letter will so indicate. If so, to each balance transfer we add an additional finance charge as indicated on the accompanying letter. This fee will be added to the appropriate purchase balance with the balance transfer. The balance transfer transaction fee may cause the annual percentage rate on the billing statement on which the balance transfer first appears to exceed the nominal annual percentage rate.

### Transaction Fee for Purchases Made in a Foreign Currency:

You have made a purchase in a foreign currency for which we assess a foreign currency transaction fee if you have made a purchase in a currency other than U.S. dollars. If your account is subject to transaction fees for purchases made in a foreign currency, the accompanying letter will so indicate. If so, to each balance transfer we add an additional finance charge as indicated

> **Exhibit A**
> Citibank Card Agreement
> Pages 6 and 7 of 16

on the accompanying letter. This foreign currency transaction fee will be added to the appropriate purchase balance with the foreign currency purchase. The foreign currency transaction fee may cause the annual percentage rate on the billing statement on which this purchase made in a foreign currency first appears to exceed the nominal annual percentage rate.

### Transaction Fee for Cash Advances:

You have obtained a cash advance for which we assess a cash advance transaction fee if you obtain funds from an automated teller machine (ATM), through a convenience check, through home banking, or through a financial institution; make a wire transfer; acquire a money order, traveler's check, lottery ticket, betting or casino chip, or similar item; or engage in another similar transaction. We may add an additional finance charge to the appropriate advance balance with each cash advance. The accompanying letter describes any such additional finance charges, which may be subject to a minimum or a maximum amount. (The amount of the cash advance may include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the nominal annual percentage rate.

### Minimum Finance Charge:

If finance charges based on periodic rates are being added to your account, but the total of such finance charges for purchases and cash advances is less than $.50, we assess a minimum **FINANCE CHARGE**, based on periodic rates, of $.50. We add the amount to the feature that is being assessed a finance charge. If more than one feature is assessed a finance charge, we may add the minimum finance charge to any such feature at our discretion.

### Credit Balance:

You may not maintain a credit balance on your account in excess of your assigned credit line. We will return to you any credit amount over $1.00 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges billed to your account.

### Security Interest for Secured Accounts:

The accompanying letter indicates if your account is a secured account. If it is, you have given us a security interest in a Certificate of Deposit to secure repayment of your account. If you withdraw your funds from the Certificate of Deposit, we will close your card account.

### Information on Foreign Currency Conversion Procedures:

If you make a transaction in a foreign currency, other than a cash advance made at a branch or ATM of one of our affiliates, MasterCard, Visa, or American Express, depending on which card is used, converts the amount into U.S. dollars as follows:

• MasterCard complies with its foreign currency conversion procedures then in effect. MasterCard currently uses a conversion rate in effect one day prior to its transaction processing date. Such rate is either a wholesale market rate or the government-mandated rate.

• Visa complies with its foreign currency conversion procedures

then in effect. Visa currently uses a conversion rate in effect on its applicable central processing date. Such rate is either a rate it selects from the range of rates available in wholesale currency markets, which may vary from the rate it receives, or the government-mandated rate.

• American Express complies with its foreign currency conversion procedures then in effect. Unless a particular rate is required by applicable law, the rate used by American Express shall be the highest interbank rate selected on the business day prior to the day on which the transaction is processed by American Express.

If a cash advance is made in a foreign currency at a branch or ATM of one of our affiliates, the amount is converted into U.S. dollars by our affiliate in accordance with our foreign currency conversion procedures then in effect. Our affiliate currently uses a conversion rate in effect on its applicable processing date. Such rate is either a mid point market rate or the government-mandated rate.

The foreign currency conversion rate in effect on the applicable processing date for a transaction may differ from the rate in effect on the Sale or Post date on your billing statement for that transaction.

If a transaction is converted by a third party prior to such transaction being processed by MasterCard, Visa, or American Express, the foreign currency conversion rate for that transaction will be the rate selected by that third party.

### Minimum Amount Due:

The accompanying letter indicates which of the following calculation methods apply to your account.

**Calculation Method A**

Each month you must pay a minimum amount that is the total of two figures. The first is any previous amount that is past due plus any amount in excess of your credit line. The second is the greater of the amount of your billed finance charges or the amount that appears on the accompanying letter. In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

**Calculation Method B**

Each month you must pay a minimum amount that is calculated as follows. First, we begin with any amount that is past due and add to it any amount in excess of your credit line. Second, we add $6 if any annual percentage rate imposed on your account exceeds 19.99%. Third, we add the largest of the following:

• The amount of your billed finance charges;

• The New Balance on the billing statement if it is less than $20;

• $20 if the New Balance is at least $20 and not greater than $960; or

• 1/48 of the New Balance (which calculation is rounded down to the nearest dollar) if the New Balance exceeds $960.

If no annual percentage rate imposed on your account exceeds 19.99% and the largest of the above calculations is the amount of your billed finance charges, we add $5 to the calculation of the Minimum Amount Due. However, the Minimum Amount Due will never exceed your New Balance.

In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

**Calculation Method C:**

Each month you must pay a minimum amount that is calculated as follows. First, we begin with any amount in excess of your annual percentage rate. Third, we add the largest of the following:

• The amount of your billed finance charges;

• The New Balance on the billing statement if it is less than $20;

• $20 if the New Balance is at least $20 and not greater than $960; or

• 1/48 of the New Balance (which calculation is rounded down to the nearest dollar) if the New Balance exceeds $960.

If no annual percentage rate imposed on your account exceeds 19.99% and the largest of your billed finance charges, we add $5 to the calculation of the Minimum Amount Due will never exceed your New Balance.

In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

**Calculation Method D:**

Each month you must pay a minimum amount that is calculated as follows. First, we begin with any amount in excess of your credit line. Second, we add to it any amount in excess of your credit line. Second, we add the largest of the following:

• The New Balance on the billing statement if it is less than $20;

• $20 if the New Balance is at least $20 and not greater than $960; or

• 1% of the New Balance (which calculation is rounded down to the nearest dollar) plus the amount of any applicable late fee; or

• 1.5% of the New Balance (which calculation is rounded down to the nearest dollar).

However, the Minimum Amount Due will never exceed your New Balance. In calculating the Minimum Amount Due from the New Balance added to your account during the billing period.

### Payments:

You must pay at least the Minimum Amount Due by the payment due date, and you may pay more. The New Balance shown on your billing statement may be subject to different periodic rates. If you choose the credit to pay off balances at lower periodic rates before balances at higher periodic rates, it will cost you less if you pay more than the Minimum Amount Due or skip a payment. We do not permit you to skip a payment when offered to you. Follow the instructions for making payments that we provide you or that are received on the form specified in your billing statement instructions. Do not send cash. Do not make any restrictive endorsement on any payment or Agreement. You agree

11/15/2007 14:03 FAX  93306745          LEGAL          → JULIE NELSON    Ø029/050

---

**Exhibit A**
Citibank Card Agreement
Pages 8 and 9 of 16

---

on rate in effect on
ate is either a rate it
holesale currency mar-
t, or the government—

currency conversion
rate is required by
press shall be the the
as day prior to the day
erican Express.

loy at a branch or ATM
ted into U.S. dollars
currency conversion
ity uses a conversion
e. Such rate is either
mandated rate.

t on the applicable pro-
n the rate in effect on
nt for that transaction,
prior to such transac-
: American Express, the
asaction will be the rate

he following calculation

nt that is the total of
that is past due plus
s second is the greater
n the amount that
lating the Minimum
Balance certain fees
od.

nt that is calculated as
t is past due and add to
second, we add $5 if any
ount exceeds 19.99%

if it is less than $20;
not greater than $960; or
s is rounded down to the
960.

r account exceeds
sions is the amount of
r calculation of the
m Amount Due will

may subtract from the
int during the billing

### Calculation Method C
Each month you must pay a minimum amount that is calculated as follows. First, we begin with any amount that is past due and add to it any amount in excess of your credit line. Second, we add $5 if any annual percentage rate imposed on your account exceeds 19.99%. Third, we add the largest of the following:
- The amount of your billed finance charges plus any applicable late fee;
- the New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20 and not greater than $960; or
- 1/48 of the New Balance (which calculation is rounded down to the nearest dollar) if the New Balance exceeds $960.

If no annual percentage rate imposed on your account exceeds 19.99% and the largest of the above calculations is the amount of your billed finance charges plus any applicable late fee, we add $5 to the calculation of the Minimum Amount Due. However, the Minimum Amount Due will never exceed your New Balance.

In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

### Calculation Method D
Each month you must pay a minimum amount that is calculated as follows. First, we begin with any amount that is past due and add to it any amount in excess of your credit line. Second, we add the largest of the following:
- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;
- 1% of the New Balance (which calculation is rounded down to the nearest dollar) plus the amount of your billed finance charges and any applicable late fee; or
- 1.5% of the New Balance (which calculation is rounded down to the nearest dollar).

However, the Minimum Amount Due will never exceed your New Balance. In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

### Payments:
You must pay at least the minimum amount due by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges. We may also allow you to skip a payment. If we do, we will notify you. If you choose to skip a payment when offered, we will assess finance charges.

Instructions for making payments are on your billing statement. In order to be credited as of a particular day, your payment must be received in the form specified, and by the hour specified, in those instructions. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on

deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. We reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the United States. If we do, we will select the effective currency conversion rate at our discretion and credit your account in U.S. dollars after deducting any fees or costs incurred in connection with processing your payment. If such fees or costs are not fully deducted at the time your account is credited for a payment, we will bill you separately for them.

### Over-the-Credit-Line Fee:
We may add a fee to the standard purchase balance for each billing period that the New Balance exceeds your credit line. We may add this fee even if we authorize the transaction that causes the New Balance to exceed your credit line. If we add this fee, the amount of this fee appears on the accompanying letter.

### Late Fee:
We may add a fee to the standard purchase balance for each billing period you fail to pay, by its due date, the Minimum Amount Due (less the Amount Over Credit Line shown on your billing statement). If we do, the amount of this fee appears on the accompanying letter.

### Returned Payment Fee:
We may add a fee to the standard purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. If we do, the amount of this fee appears on the accompanying letter. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

### Convenience Checks:
Convenience checks may be used to purchase goods and services, to transfer balances from others, or to obtain funds up to the amount of your available cash advance limit unless that amount will cause the total balance to exceed your credit line. We will treat convenience checks as a cash advance and charge them against your cash advance limit. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this or any other Card Agreement that you have with us. We will not certify any convenience checks, nor will we return paid convenience checks.

### Balance Transfer Checks:
Balance transfer checks may be used to transfer balances or to obtain funds up to the amount of your available credit line. Each balance transfer check must be in the form we have issued and must be used according to any instructions we give you. Balance transfer checks may not be used to pay any amount owed to us under this or any other Card Agreement that you have with us. We will not certify any balance transfer checks, nor will we return paid balance transfer checks.

### Returned Convenience Check Fee:
We may add a fee to the standard advance balance if we decline to

8

9

**Exhibit A**
Citibank Card Agreement
Pages 10 and 11 of 16

honor a convenience check. If we do, the amount of this fee appears on the accompanying letter. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance limit or credit line. If you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Stop Payment Fee:**
We may add a fee to the standard advance balance when payment of a convenience check is stopped at your request. If we do, the amount of this fee appears on the accompanying letter. You may stop payment on convenience checks by notifying us in writing at P.O. Box 6500, Sioux Falls, South Dakota 57117, or by calling us at the Customer Service telephone number listed on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order will remain in effect for six months unless renewed in writing.

Once a charge is made through the use of the card or account number we cannot "stop payment" on the charge. If there is a dispute involving a charge on your account, please refer to the section entitled "What To Do If There's An Error In Your Bill"

**Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling the Customer Service telephone number shown on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. Don't use the card, account number, or any checks after we've been notified, even if they are found or returned. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay, by its due date, the Minimum Amount Due listed on each billing statement; file for bankruptcy; exceed your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance. If you have given us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are

suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

**Arbitration Provision for Certain Cardmembers:**
The accompanying letter indicates whether your account is subject to mandatory, binding arbitration. If it is, the following "Arbitration" provision is part of this Agreement.

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEEDINGS.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
• What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

• What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before

the opening of your acco

• Broadest interpretat
subject to arbitration a
provision in the broade
This arbitration provisio

• What about Claims fi
in a small claims court
the matter remains in s
(non-class, non repres

**How Arbitration Wo**
• How does a party ini
arbitration must choose
and follow its rules and
arbitration: American A
Forum. Any arbitration
chosen by the arbitratio
place to which you are
of the current rules of a
structions for initiating t

American Arbitra
335 Madison Av
New York, NY 1
Web site: www.

National Arbitra
P.O. Box 50191
Minneapolis, M
Web site: www.

At any time you or we
arbitration of a Claim, o
tration, even if such Cla
begun or a final judgme
exercise these rights at
any particular Claims, tl
time or in connection w

• What procedures and
neutral arbitrator will re
a lawyer with at least te
judge, selected in accor
The arbitration will follo
ment in effect on the dat
does not include
based on any other
this Agreement may
the discovery available
able steps to protect ce
dential information if req
will apply applicable rul
applicable statutes in tu
recognized at law, and
damages or other relief
we may choose to have
The arbitrator will make
you or us, and will provide a
An award in arbitration

10                                                                                              11

---

**Exhibit A**

Citibank Card Agreement

Pages 12 and 13 of 16

---

the opening of your account, are subject to arbitration.

• **Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

• **What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**

• **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.aor.org
National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

• **What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations

between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

• **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

• **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

• **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

• This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

**Credit Reporting:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account

11          12          13

---

**Exhibit A**
Citibank Card Agreement
Pages 14 and 15 of 16

---

may be reflected on your credit report. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know the names of the agencies we have contacted, write us at the Customer Service address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits this notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address listed on the billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the total balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. Changing terms includes adding, replacing or deleting provisions relating to your account and to the rates, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of

the change and pay us the total balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call the Customer Service telephone number shown on the billing statement. You can also call toll-free or local Directory Assistance to get our telephone number.

Ken Storx
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2005 Citibank (South Dakota), N.A.

**What To Do If There's An Error In Your Bill**

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
• Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment

on any amount y
tell us at least te
is scheduled to o

**Your Rights and
Your Written Not**
We must acknow
corrected the err
the error or expla
rect. After we rec
your question, or
to bill you for the
and we can apply
do not have to p
ing, but you can
are not in questio

If we find that we
will not have to p
amount. If we dis
charges, and you
questioned amou
of the amount yo

If you fail to pay
you as delinquen
and you write to
pay, we must tell
about your bill. A
one to whom we
anyone we report
us when it is fina

If we don't follow
questioned amou

**Special Rule fo**
If you have a pro
you purchased w
to correct the pri
not to pay the re
There are two lim

• You must have
within your hom
and

• The purchase p

These limitations
if we mailed you

© 2005 Citibank (S
8S73841Q Pg. 11A

---

**Exhibit A**
Citibank Card Agreement
Pages 15 and 16 of 16

---

equest additional
and that we may
el us in the names
we-up credit reports
count for a credit line
e agencies, we have
dress listed on the
elephone or by mail of
you an opportunity
ce.

to a credit reporting
es listed on the
the matter and if our
act each credit report-
est they correct the
gation, we will tell
how to submit a
'our statement will

**rding:**
your telephone
the quality of our

tlying us in writing
all balance according
your account or sus-
r reason without
ed, account number,
n the card or the

account is not
if you have sufficient
insactions that may
r suspicious activity
your credit privileges

this Agreement at
be based on informa-
to make payments
is other creditors,
the number of credit
mpetitive or market-
ng, replacing or
nd to the nature,
igations you or we
hanges are binding
es, rate or minimum
r notice at least
riod in which the
e to the change, you
the effective date of

---

the change and pay us the total balance, either at once or under
the terms of the unchanged Agreement. Unless we notify you
otherwise, use of the card after the effective date of the change
shall be deemed acceptance of the new terms, even if the 25
days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under
this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obliga-
tions under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by
federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call the Customer Service telephone number shown on the billing
statement. You can also call toll-free or local Directory Assistance to
get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2005 Citibank (South Dakota), N.A.

**What To Do If There's An Error In Your Bill.**

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and
our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more
information about a transaction on your billing statement, write to
us (on a separate sheet) at the address provided in the Billing Rights
Summary portion on the back of your billing statement. Write to us
as soon as possible. We must hear from you no later than 60 days
after we sent you the first billing statement on which the error
or problem appeared. You can telephone us, but doing so will not
preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there
is an error. If you need more information, describe the item you are
not sure about.
* Please sign your letter.

If you have authorized us to pay your credit card bill automatically
from your savings or checking account, you can stop the payment

---

on any amount you think is wrong. To stop the payment you must
tell us at least three business days before the automatic payment
is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive
Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have
corrected the error by then. Within 90 days, we must either correct
the error or explain why we believe your billing statement was cor-
rect. After we receive your letter, we cannot try to collect any amount
you question, or report your account as delinquent. We can continue
to bill you for the amount you question, including finance charges,
and we can apply any unpaid amount against your credit line. You
do not have to pay any questioned amount while we are investigat-
ing, but you are still obligated to pay the parts of your balance that
are not in question.

If we find that we made a mistake on your billing statement, you
will not have to pay any finance charges related to any questioned
amount. If we didn't make a mistake, you may have to pay finance
charges, and you will have to make up any missed payments on the
questioned amount. In either case, we will send you a statement
of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report
you as delinquent. However, if our explanation does not satisfy you
and you write to us within 10 days telling us that you still refuse to
pay, we must tell anyone we report you to that you have a question
about your bill. And, we must tell you the name and address of any-
one to whom we reported your account information. We must tell
anyone we report you to that the matter has been settled between
us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the
questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that
you purchased with a credit card, and you have tried in good faith
to correct the problem with the merchant, you may have the right
not to pay the remaining amount due on the property or services.
There are two limitations on this right.
* You must have made the purchase in your home state or, if not
within your home state, within 100 miles of your current address;
and
* The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or
if we mailed you the advertisement for the property or services.

© 2005 Citibank (South Dakota), N.A.
85738410 PF 11/05 107527                                      11/05

---

James Williams
Grand Central Station
P. O. Box 4082
New York, NY 10163-4082

August 7, 2006

```
┌─────────────────────────────┐
│        Exhibit B            │
│   Letter of James Williams to│
│   Citi Card Customer Service │
│     Dated August 6, 2006    │
│        Page 1 of 2          │
└─────────────────────────────┘
```

**Certified Mail R.R.R.**
Citi Card
Customer Service
Box 6500
Sioux Falls, South Dakota  57117

Re:  Tortious Conduct and Breach of Card Agreement Contract
Account Number 5424 1808 6953 7065

Dear Sir:

On or about July 25, 2006, I received notice that the Annual Percentage Rate on the above account had been increased to 32,240%.  This increase notice appeared on the August 2006 statement, which I received on the above date.  This was the only notice of the increase.  Had I been informed of the APR increase, either by telephone or via mail, I would not have used the card before July 25, 2006.

The *Citi Card* August Statement contained the following notice of the increase:

*The Annual Percentage Rate on your account has been increased due to one of the following reasons stated in you Card Agreement with us: you failed to make a payment to us when due, you exceed your credit or you made a payment to us that was not honored by your bank.*

Each of the above statements on the *Citi Card* August Statement is false.  I did not "fail [] to make a payment to [] you when due [.]"  I did not "exceed [] your credit [.]"  "I did not [make] a payment to [] [you] that was not honored by [] [my] bank."  In fact, I have been a model Card Agreement customer.

The punitive actions by *Citi Card* against me as a Card holder are without justification, in direct breach of the Card Agreement contract, and in violation of Federal, South Dakota and New York state laws; including the use of the United States Postal Service to coerce payment by fraud and misappropriation of non-due punitive fees.  In addition, *Citi Card* has disregarded The National Bank Act and the Federal Truth in Lending Act by its conduct.

11/15/2007 14:04 FAX  93306745          LEGAL                    → JULIE NELSON    ☑ 036/050

Citi Card                          - Page 2 -                        August 7, 2006

Mandatory arbitration is not a solution to resolve unlawful conduct.

The damage to my credit standing, statutory damages, attorney's fees, and emotional damages exceed any damages that could be claimed by *Citi Card*.

The tortious conduct of *Citi Card*; the breach by *Citi Card* of its Card Agreement contract, have made performance under the *Citi Card* Agreement impossible.

The contract is cancelled.

                              Sincerely,


                              James Williams

> **Exhibit B**
> Letter of James Williams to
> Citi Card Customer Service
> Dated August 6, 2006
> Page 2 of 2

**Exhibit C**
Receipt of Letter of James
Williams, dated August 7, 2006, by Citi
Card Customer on August 11, 2006
Page 1 of 1

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4 in this box *

James Williams
Grand Central Station
P. O. Box 4082
New York, NY 10163-4082

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Citi Card
Customer Service
Box 6500
Sioux Falls, SD
    57117

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
AUG 1 1 2006

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7099-3400-0012-6228-5754

PS Form 3811, August 2001    Domestic Return Receipt    102695-02-M-1035

11/15/2007 14:05 FAX  93306745          LEGAL                    → JULIE NELSON        ☑039/050

E_/_/ _

11/15/2007 14:05 FAX 93306745          LEGAL                    → JULIE NELSON      ☑040/050

---

**Exhibit D**
Acct. 5424-1808-6953-7065 Statement
dated, 7-18-06,
with payment credit of $130
Page 1 of 1

---

# Citi® Diamond Preferred® Card                                         citi

Account Number
5424 1808 6953 7065

Customer Service:

| 1-800-633-7367 | Total Credit Line | Available Credit Line | Cash Advance Limit | Available Cash Limit | New Balance |
|---|---|---|---|---|---|
| BOX 6500 | $8000 | $81 | $6200 | $81 | $7918.59 |
| SIOUX FALLS, SD | Amount Over Credit Line | | Past Due | Purch/Adv Minimum Due | Minimum Amount Due |
| 57117    07/18/2006 | $0.00 + | | $0.50 + | $334.16 = | $334.66 |

| Sale Date | Post Date | Category | Activity Since Last Statement | Amount |
|---|---|---|---|---|
| | 7/03 | | Payments, Credits & Adjustments | |
| | | | PAYMENT THANK YOU | -130.00 |
| | | | Standard Purch | |
| 6/17 | 6/17 | | LATE FEE - JUN PAYMENT PAST DUE | 39.00 |
| 6/23 | 6/23 | Health Care | WILLMER CHEMISTS      NEW YORK      NY | 41.52 |
| 6/23 | 6/23 | Services | ALLSTATE  *PAYMENT 800-255-7828  IL | 46.69 |
| 7/12 | 7/12 | Merchandise | ADORAMA CAMERA INC  212-7410466  NY | 33.32 |
| | | Auto Rental | U-HAUL-CTR-PARKSLOPE B BROOKLYN  NY | 217.95 |
| | 7/18 | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 104.22 |
| | 7/18 | | Balance Transfer - Charged To Offer 4 | |
| | | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 14.36 |
| | 7/18 | | Balance Transfer - Charged To Offer 5 | |
| | | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 68.86 |
| | 7/18 | | Balance Transfer - Charged To Offer 7 | |
| | | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 28.72 |

Your late fee was based on your account balance as of the payment due date
(07/11/06), which was $7,445.48.

The Annual Percentage Rate on your account has been increased due to one of the
following reasons stated in your Card Agreement with us: you failed to make a
payment to us when due, you exceeded your credit line or you made a payment to
us that was not honored by your bank.

Please see enclosed privacy notice for important information.

MANAGE YOUR ACCOUNT ONLINE-FREE, EASY & SECURE!  View your statement, recent
purchases, and balance; pay your bill and sign-up for customized email alerts
about your account. Do all this and more!  Register at citicards.com

| Account Summary | Previous Balance | (+) Purchases & Advances | (-) Payments & Credits | (+) FINANCE CHARGE | (=) New Balance |
|---|---|---|---|---|---|
| PURCHASES | $7,455.95 | $376.48 | $130.00 | $216.16 | $7,918.59 |
| ADVANCES | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL | $7,455.95 | $376.48 | $130.00 | $216.16 | $7,918.59 |

Days This Billing Period: 32

| Rate Summary | Balance Subject to Finance Charge | Periodic Rate | Nominal APR | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| PURCHASES | | | | |
| Standard Purch | $3,687.03 | 0.08833%(D) | 32.240% | 32.240% |
| Offer 4 | $508.21 | 0.08833%(D) | 32.240% | 32.240% |
| Offer 5 | $2,436.26 | 0.08833%(D) | 32.240% | 32.240% |
| Offer 7 | $1,015.99 | 0.08833%(D) | 32.240% | 32.240% |
| ADVANCES | | | | |
| Standard Adv | $0.00 | 0.08833%(D) | 32.240% | 32.240% |

SEND PAYMENTS TO:  CITI CARDS PO BOX 183061 COLUMBUS, OH 43218-3061                 124715
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE. PAYMENT MUST BE RECEIVED BY 5:00 PM LOCAL TIME ON 08/11/2006

11/15/2007 14:05 FAX  93306745              LEGAL                    → JULIE NELSON     ☑ 041/050

11/15/2007 14:05 FAX 93306745          LEGAL              → JULIE NELSON      ☑042/050

---

**Exhibit E**
Acct. 5424-1804-2656-2606 Statement
dated, 8-18-06,
with payment credit of S304.05
Page 1 of 1

---

# Citi® Dividend Platinum Select® Card

citi

**Account Number**
5424 1804 2656 2606

**Customer Service:**

| 1-800-950-5114 | Total Credit Line | Available Credit Line | Cash Advance Limit | Available Cash Limit | New Balance |
|---|---|---|---|---|---|
| BOX 6500 | $17000 | $0 | $8500 | $0 | $17056.04 |
| SIOUX FALLS, SD | Statement/ | Amount Over | | Purch/Adv | Minimum |
| 57117 | Closing Date | Credit Line | Past Due | Minimum Due | Amount Due |
| | 08/18/2006 | $56.04 + | $0.00 + | $617.03 = | $673.07 |

| Sale Date | Post Date | Reference Number | Activity Since Last Statement | Amount |
|---|---|---|---|---|
| | 8/03 | Y0032006 | Payments, Credits & Adjustments PAYMENT THANK YOU | -304.05 |
| | 8/18 | | Standard Purch PURCHASES*FINANCE CHARGE*PERIODIC RATE | 288.87 |
| | 8/18 | | Balance Transfer - Charged To Offer 4 PURCHASES*FINANCE CHARGE*PERIODIC RATE | 1.99 |
| 7/25 | 7/25 | 7VF22VDO | Rate Sale - Charged to Offer 5 ALLSTATE  *PAYMENT  800-255-7828  IL | 46.69 |
| 8/05 | 8/05 | WXX8FT3O | HOSTWAY.COM WEBHOSTING 312-994-7656  IL | 57.65 |
| 8/13 | 8/13 | 7BLFNTWF | U-HAUL-CTR-PARKSLOPE # BROOKLYN   NY | 73.51 |
| | 8/18 | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 66.99 |
| | 8/18 | | Balance Transfer - Charged To Offer 7 PURCHASES*FINANCE CHARGE*PERIODIC RATE | 89.18 |

****Dividend Dollars Summary****
Previous Statement Div Dollar Total          1.14
Base Div Dollars Earned                      1.78
Total Div Dollars Earned this period         1.78
Total Div Dollars Available                  2.92

Bonus Cash Back may take one to two billing cycles to appear on your statement.
Please refer to the specific terms and conditions pertaining to the promotion
for further details.

If your 'Total Div Dollar Available' balance is at least $50, call us at
1-866-676-4672 or go to www.citicards.com, so that we may send you a check.

The Annual Percentage Rate on your account has been increased due to one of the
following reasons stated in your Card Agreement with us: you failed to make
payment to us on this account or any other account that you have with us when
due, you exceeded your credit line on this account or any other account that
you have with us, or you made a payment to us on this account or any other
account that you have with us that was not honored by your bank.

Pay your Citi credit card bill online anytime. It's easy, secure and free.
Plus, you can schedule payments in advance or pay by 5pm ET on a weekday to
post the same day! Sign-on to citicards.com and select Make a Payment.

KEEP TRACK OF YOUR BACK-TO-SCHOOL SPENDING. Stay on top of your purchases and
available credit on your Citi credit card so you can manage your account
wisely. Sign-on at citicards.com and view your account summary anytime,
anywhere.

Life happens. But bills like this don't have to. Safeguard this account with
Credit Protectorl It gives you some financial breathing room when life changing
events interrupt your income or stress your budget. To enroll, call
1-866-818-3439.

SEND PAYMENTS TO: CITI CARDS PO BOX 183042 COLUMBUS, OH 43218-3042
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE. PAYMENT MUST BE RECEIVED BY 5:00 PM LOCAL TIME ON 09/12/2006

110279

James Williams
Grand Central Station
P. O. Box 4082
New York, NY 10163-4082

September 7, 2006

```
┌────────────────────────────────┐
│           Exhibit F            │
│  Letter of James Williams to   │
│  Citi Card Customer Service    │
│   Dated September 7, 2006      │
│         Page 1 of 2            │
└────────────────────────────────┘
```

**Certified Mail R.R.R.**
Citi Card
Customer Service
Box 6500
Sioux Falls, South Dakota 57117

<u>Re: Tortious Conduct and Breach of Card Agreement Contract</u>
<u>Account Number **5424 1804 2656 2606**</u>

Dear Sir:

On or about August 25, 2006, I received notice that the Annual Percentage Rate on the above account had been increased to 32.240%. This increase notice appeared on the September 2006 statement, which I received on the above date. This was the only notice of the increase. Had I been informed of the APR increase, either by telephone or via mail, I would not have used the card before August 25, 2006.

The *Citi Card* September 2006 statement contained the following notice of the increase:

> *The Annual Percentage Rate on your account has been increased due to one of the following reasons stated in you Card Agreement with us: you failed to make payment to us on this account or any other account that you have with us when due, you exceeded your credit line on this account or any other account that you have with us, or you made a payment to us on this account or any other account that you have with us that was not honored by your bank.*

Each of the above referenced statements by CitiCard on its September 2006 billing account is false. I did not "fail [] to make a payment to [] you on this account or any other account that [I] have with [you] when due[.]" I did not "exceed [] your credit line on this account or any other account that [I] have with [you][.] I did not make "a payment to [you]on this account or any other account that [I] have with [you] that was not honored by [my] bank."

Citi Card                        - Page 2 -                        September 7, 2006

In a Certified Letter R.R.R. dated August 7, 2006, I informed you that your actions on *CitiCard* Account # 5424 1808 6953 7065 were also unfounded. In addition, I gave notice to you in my letter that you had made performance under your Card Agreement impossible, and because of you conduct, the damages you caused exceeded any claim moneys own *CitiCard*. As of September 7, 2006, I have not received a reply to my letter dated August 7, 2006.

Likewise, the punitive actions by *Citi Card* against me as a Card holder under Account # 5424 1804 2656 2606 are without justification, in direct breach of the Card Agreement contract, and in violation of Federal, South Dakota and New York state laws; including the use of the United States Postal Service to coerce payment by fraud and misappropriation of non-due punitive fees. In addition, *Citi Card* has disregarded The National Bank Act, the Federal Truth in Lending Act, and the Federal Fair Debt Collection Practices Act, by its conduct.

Mandatory arbitration is not a solution to resolve unlawful conduct.

The damage to my credit standing, statutory damages, attorney's fees, and emotional damages exceed any damages that could be claimed by *Citi Card*.

The tortious conduct of *Citi Card*; the breach by *Citi Card* of its Card Agreement contract, have made performance under the *Citi Card* Agreement impossible.

The contract is cancelled.

Sincerely,

James Williams

> **Exhibit F**
> Letter of James Williams to
> Citi Card Customer Service
> Dated September 7, 2006
> Page 2 of 2

11/15/2007 14:05 FAX 83306745          LEGAL                    → JULIE NELSON      ☑ 046/050

11/15/2007 14:05 FAX  93306745          LEGAL                    → JULIE NELSON        ☑ 047/050

**Exhibit G**
Receipt of Letter of James
Williams, dated September 7, 2006, by Citi
Card Customer on September 12, 2006
Page 1 of 1

SIOUX FALLS SD        8:38 09/12

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

James Williams
P.O. Box 4082
Grand Central Station
New York, NY 10163-4082

₪064

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Citi Card
Customer Service
Box 6500
Sioux Falls, SD
57117

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by ( Printed Name )    C. Date of Delivery
                              SEP 1 2 2006
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☑ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
(Transfer from service label)    7006 0810 0001 0144 1988

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

11/15/2007 14:05 FAX  93306745          LEGAL                → JULIE NELSON      ☑ 048/050

11/15/2007 14:05 FAX  93306745              LEGAL                    → JULIE NELSON        ☑049/050

## Safety, Security and Savings...with Drive America

Family coverage. No initiation fees. No mileage limits. Repair advice.

**First Month Free when you Enroll...Plus $20 in gas rebate coupons**
Visit www.drive-america.com/trial or call 1-866-864-8881.

- **Roadside Assistance**—Towing to your choice of destination up to $125, flat tire change, battery jumpstart, gas or anti-freeze/coolant delivery.
- **Expert Opinion Service**—Access to ASE-certified technicians for second opinions on repairs, repair costs and repair referrals.
- **"Just-In-Case" Benefits**—$1,000 emergency travel expense reimbursement, $5,000 theft reward, destination assistance and more.

## DRIVE AMERICA
Auto Club Program

Enjoy Drive America, a program of United States Auto Club, Motoring Division, Inc., an affiliate of Citigroup. FREE for 30 days when you enroll. After that, the monthly fee is $7.99 per month. You can cancel at any time and receive a refund of your current month's paid membership fee. Enrollment by phone is not available in all states. Offer not available to residents of Maryland.

PCEN00B0066

## Citi® Diamond Preferred® Card                    citi

Account Number
5424 1808 6953 7065

| Customer Service: | Total Credit Line | Available Credit Line | Cash Advance Limit | Available Cash Limit | New Balance |
|---|---|---|---|---|---|
| 1-800-633-7347 | $8000 | $544 | $6200 | $544 | $7455.95 |
| BOX 6500 | Statement/ | Amount Over | | Past Due | Periodic/ Minimum Due |
| SIOUX FALLS, SD | Closing Date | Credit Line | | | Minimum Amount Due |
| 57117 | 06/16/2006 | $0.00 + | | $0.00 + | $130.50 = $130.50 |

| Sale Date | Post Date | Category | Activity Since Last Statement | Amount |
|---|---|---|---|---|
| | 6/02 | | Payments, Credits & Adjustments | |
| | | | PAYMENT THANK YOU | -123.65 |
| | | | Standard Purch | |
| 5/15 | 5/17 | Merchandise | WHOLE FOODS MARKET/SIA MANHATTAN    NY | 13.54 |
| 5/22 | 5/22 | Merchandise | CIRCUIT CITY SS 83670  NEW YORK     NY | 43.34 |
| 5/23 | 5/23 | Services | ALLSTATE    *PAYMENT 800-255-7828   IL | 46.49 |
| 5/23 | 5/23 | Merchandise | PERELANDRANATURALFOODS BROOKLYN     NY | 17.40 |
| 5/25 | 5/25 | Services | USPS 3558250010            NEW YORK  NY | 40.00 |
| | 6/16 | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 41.27 |
| | 6/16 | | Balance Transfer - Charged To Offer 4 | |
| | | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 2.56 |
| | 6/16 | | Balance Transfer - Charged To Offer 5 | |
| | | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 8.41 |
| | 6/16 | | Balance Transfer - Charged To Offer 7 | |
| | | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | 4.26 |

Note: Effective 04/01/2006, MasterRental insurance coverage is not available in Ireland, Israel, or Jamaica. Please see enclosed insert or website below for details. Contact 1-800-MC-ASSIST with questions.
http://www.citibank.com/us/cards/matr-rntl.htm

Life happens. But bills like this don't have to. Get Credit Protector for those times when life-changing events like job loss, disability, moving, or going to college interrupt your income or strain your budget. To enroll call, 1-888-395-9159.

Pay your Citi credit card bill online anytime. It's easy, secure and free. Plus, you can schedule payments in advance or pay by 5pm ET to post the same business day! Sign-on to citicards.com and select Make a Payment.

| Account Summary | Previous Balance | (+) Purchases & Advances | (-) Payments & Credits | (+) FINANCE CHARGE | (=) New Balance |
|---|---|---|---|---|---|
| PURCHASES | $7,362.11 | $160.99 | $123.65 | $56.50 | $7,455.95 |
| ADVANCES | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL | $7,362.11 | $160.99 | $123.65 | $56.50 | $7,455.95 |

| Rate Summary | Balance Subject to Finance Charge | Periodic Rate | Nominal APR | Days This Billing Period: 31 ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| PURCHASES | | | | |
| Standard Purch | $3,472.93 | 0.03833%(D) | 13.990% | 13.990% |
| Offer 4 | $502.47 | 0.01641%(D) | 5.990% | 5.990% |
| Offer 5 | $2,481.28 | 0.01093%(D) | 3.990% | 3.990% |
| Offer 7 | $1,004.11 | 0.01367%(D) | 4.990% | 4.990% |
| ADVANCES | | | | |
| Standard Adv | $0.00 | 0.06299%(D) | 22.990% | 22.990% |

SEND PAYMENTS TO: CITI CARDS PO BOX 183061 COLUMBUS, OH 43218 3061                    109845

---

## Exhibit H

Acct. 5424-1808-6953-7065 Statement dated, 6-16-06, with payment credit of $130 bank stamped on back of statement. Page 1 of 2

```
MC:    PAYMENT          07/03/06 14:21   FC#00002 FA# 018
046-01 Acct# xxxxxxxxxx37065             $130.00 ONL
```

## Information About Your Account

**Grace Period for Purchases:** *(text illegible)*

**Grace Period for Advances:** *(text illegible)*

**Rates:** *(text illegible)*

**Balance Subject to Finance Charge:** *(text illegible)*

- **Average Daily Balance (Including New Transactions):** *(text illegible)*

- **Special Calculation Method for Certain Cardmembers:** *(text illegible)*

## Notification of Disputed Item—Please call Customer Service before completing this form.

*(form text illegible)*

**Annual Membership Fee:** *(text illegible)*

**Certain Choice Accounts:** *(text illegible)*

**Minimum Finance Charge:** *(text illegible)*

## BILLING RIGHTS SUMMARY

**In Case of Errors or Questions About Your Bill:** *(text illegible)*

If you send us a letter please include the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- *(text illegible)*

**Special Rule for Credit Card Purchases:** *(text illegible)*

Exhibit H
Acct. 5424-1808-6953-7065
Statement dated, 6-16-06, with payment credit of $130 bank stamped on back of statement
Page 2 of 2

11/15/2007 14:00 FAX  93306745          LEGAL                 → JULIE NELSON      ☑002/050

### The attached legal documents were personally served at Citibank (South Dakota), N.A.

#### Served by:

| | | |
|---|---|---|
| ☐ Minnehaha County Sheriff's Office | ☐ | Constables Office |
| ☐ Sioux Falls Police Dept. | ☐ | States Attorney Office<br>☐ Mark here if you signed a<br>waiver to attend a hearing |
| ☐ Action Process Serving | ☐ | DEA |
| ☐ Action Professional Service | ☐ | FBI |
| ☐ Aero Professional Document Services | ☐ | IRS |
| ☐ Dennis Barabas Investigations | ☐ | US Customs |
| ☒ Express Attorney Service | ☐ | US Secret Service |
| ☐ US Marshal's Office | | |

Process Server Name: ___Amy Mc Leod___

Served on:

| | | |
|---|---|---|
| ☐ Cathy Hoben | ☐ Gina Steineke | ☐ Kelly Umstott |
| ☐ Tanya Harder | ☐ Teresa Willson | ☒ Peggy Plagman |
| ☐ Roni Gleysteen | ☐ Bev Fenton | ☐ Dave Zimbeck |
| ☐ Louise Sandoval | ☐ Shannon Johnson | ☐ Jeff Gednalske |
| ☐ Eric Rasmussen | ☐ Darla Cape | ☐ Lauren Nadolski |
| ☐ Tammy Powell | | |

Date Served_____11/5/7_____

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     }
                      }     ss.:
COUNTY OF NEW YORK   }

SEVIL UNAY, being duly sworn, deposes and says:   I am not a party to the

action, am over 18 years of age and reside in Brooklyn, New York.

On February 21, 2008, deponent served the within **Notice of Motion** by mailing

the same in a sealed envelope, by U.S First Class mail, in a post office or official depository of

the U.S. Postal Service within the State of New York, addressed to the last known address, of the

addressee(s) as indicated below:


TO:    James Williams
       P.O. Box 4082
       Grand Central Station
       New York, New York 10163




                                                    _____
                                                    Sevil Unay

Sworn to before me this
21st Day of February, 2008



_____
Notary Public

ANTHONY GALANO III
Notary Public, State of New York
No. 02GA6002821
Qualified in New York County
Commission Expires Feb. 17, 2010


{00070286.DOC.1}